**REEVES BROTHERS, INC., Plaintiff,**

**v.**

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., Defendant.**

**Civil Action No. 94–0053–L.**

United States District Court, W.D. Virginia, Lynchburg Division.

April 11, 1995.

Timothy Earl Cupp, Cupp & Cupp, Harrisonburg, VA, Thomas N. Griffin, III, I. Faison Hicks, Parker, Poe, Adams & Bernstein, Charlotte, NC, for Reeves Bros., Inc.

John F. Corcoran, U.S. Attorney's Office, Roanoke, VA, Daniel R. Dertke, U.S. Department of Justice, Washington, DC, Andrew S. Goldman, U.S. Environmental Protection Agency, Philadelphia, PA, for U.S.E.P.A.

John F. Corcoran, U.S. Attorney's Office, Roanoke, VA, Daniel R. Dertke, U.S. Dept. of Justice, Washington, DC, Gordon W. Daiger, Matthew T. Fricker, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC, for Browner, Kostmayer.

John F. Corcoran, U.S. Attorney's Office, Roanoke, VA, for Fetzer, Guarni, Richardson, Melvin.

## MEMORANDUM OPINION

KISER, Chief Judge.

This matter is before me on the defendants' motions to dismiss. After extensive briefing and oral argument, the case is ripe for disposition. For the reasons set out below, I will dismiss plaintiff's constitutional claims against the individual capacity defendants and the statutory claims against the Environmental Protection Agency ("EPA")

and the official capacity defendants. However, the constitutional claim against the EPA and the official capacity defendants will proceed.

PARTIES:

The plaintiff has sued the EPA in addition to six of its employees. The individuals are sued in their official and individual capacities. The individuals include Carol M. Browner, EPA Administrator; Peter H. Kostmayer, Region III Administrator; Karen Melvin, Region III Chief of Enforcement Section; Richard Fetzer, On Scene Coordinator; Robert Guarni, On Scene Coordinator; and Lawrence Richardson, Civil Investigator. For purposes of this motion, these individuals divide into two groups. The first group includes what I will call the response team members. This includes defendants Melvin,[1] Fetzer, Guarni, and Richardson. The second is the group I will call the management group and includes defendants Kostmayer and Browner.

FACTS:[2]

This lawsuit arises out of an EPA enforcement action. On June 14, 1994, an EPA Emergency Response Team ("the Team") from Philadelphia arrived at property the plaintiff owned in Buena Vista, Virginia. The plaintiff had purchased the property from one John Mace, now 87 years old, in February 1994. Mr. Mace leases a dwelling on property that he sold to plaintiff.

The property in question is surrounded by a fence. Road entry to the property is through a locked gate. The fence is posted with "no trespassing" signs. In the late 1970's and through the early 1980's, the property was used for the secure placement of rubber compound materials. It continues to hold those materials to the present time. The interior portion of the property where the rubber compounds were placed, which is approximately ½ mile inside the first fence described above, was surrounded by another

---

1. Defendant Melvin was apparently not physically present on defendant's property. However, she is directly involved in the supervision of the other Response Team members and thus is grouped with those individuals for purposes of this motion. The Court notes that the parties have treated these four individuals alike as well.

2. The factual allegations are taken as true from the complaint for purposes of a motion to dismiss.

fence that was also locked. There has been no release of contaminants from this property throughout the time in question.

Mr. Mace had a key to the outside fence so that he could enter and remove equipment stored on the site. When the Team arrived in three van loads of people, Mr. Mace went outside to determine what was happening. After determining Mace had a key to the outer gate, the Team asked for it stating that they wanted to enter the property to look for hazardous substances. Mr. Mace told the Team that he did not own the property. The Team knew that the property belonged to Reeves. Reeves had not given consent nor had the Team contacted Reeves to obtain consent, even though the EPA had planned the Team's visit five days prior to the actual visit.

Mr. Mace gave the Team members the key, although plaintiff had never authorized Mr. Mace to provide the key to anyone. The Team proceeded through the first gate and drove the ½ mile to the locked inner gate. They climbed over the locked inner gate and fence and proceeded to collect soil and water samples, run other tests, and to make a visual inspection of the property.

During the search of plaintiff's property, defendant Richardson phoned James Hall, an employee of the plaintiff. Richardson met with Hall away from the property. He questioned Hall about where the rubber compounds had been stored. Richardson did not inform Hall that the Team members were presently on the property conducting tests and collecting samples. Richardson told Hall that the action with respect to the plaintiff's property was a routine follow-up of an earlier EPA inspection of another company in the area. Richardson returned to the property after his conversation with Hall and continued the Team's actions. After talking with Richardson, Hall went to the property and met the Team as it was leaving. He was not given a receipt for the water and soil samples nor was he ever served with a warrant, order, or other authorization permitting the Team's entry onto the property. The decision to send the Team from Philadelphia had been made at least five days prior to the incident in Buena Vista.

The plaintiff alleges that the defendants acted pursuant to a de facto policy of the EPA Region III in conducting the warrantless search. Plaintiff recounts its difficulties in dealing with the EPA after the search and its inability to get the Response Team defendants to acknowledge that something wrong occurred. Defendant Melvin, the supervisor of the other defendants who constituted the Team, told plaintiff that it was the usual practice for the EPA to not obtain consent or a warrant and instead to gain immediate access to property so as to inspect it for contamination. This provides an inference that it is the policy and practice of the EPA to conduct warrantless searches via EPA Response Teams and to act contrary to the requirements of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). Indeed, the leader of the Response Team, defendant Fetzer, is an experienced field investigator. It is reasonable to infer that he knew of the de facto policies and acted pursuant to them.

Defendant Kostmayer, as the head of EPA Division III, implements and authorizes policies and has the ability to alter de facto policies. Kostmayer either implemented or tolerated the policy defendant Melvin advanced. Alternatively, Kostmayer had the responsibility to communicate to Fetzer how to do his job without violating the Fourth Amendment or CERCLA and he failed to do so. Fetzer did not know how to constitutionally search the property as evidenced by a statement in his declaration that he had obtained consent from Mr. Mace, who was not even the owner.

Defendant Browner is the Administrator of the EPA. She must review the training programs of all EPA employees, including the Response Teams.

DISCUSSION:

*Fourth Amendment*

The Fourth Amendment to the Constitution provides that: "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." The pivotal issue in this case is whether the Team

violated that right when it entered the property in question. I conclude that it did.

The Fourth Amendment prohibition against unreasonable searches and seizures applies to administrative inspections of private commercial property. *Donovan v. Dewey*, 452 U.S. 594, 598, 101 S.Ct. 2534, 2537–38, 69 L.Ed.2d 262 (1981).[3] However, commercial property generally involves a lower expectation of privacy than noncommercial property, such as a home. *Id.* at 598–99, 101 S.Ct. at 2537–38. Furthermore, it is well-settled that there can be no legitimate expectation of privacy in "open fields." *United States v. Dunn*, 480 U.S. 294, 303–04, 107 S.Ct. 1134, 1140–41, 94 L.Ed.2d 326 (1987); *Oliver v. United States*, 466 U.S. 170, 177, 104 S.Ct. 1735, 1740–41, 80 L.Ed.2d 214 (1984). Under the open fields doctrine, an action that would be trespass under the common law, does not give rise to a Fourth Amendment violation. It is the open fields doctrine that the defendants seize upon to justify their high-handed tactics in this case.

The actions the Supreme Court has authorized under the open fields doctrine make clear that the only fact that prevents summary dismissal of the plaintiff's case is the taking of water and soil samples. For example, in *Oliver*, the Court approved a warrantless entry on property where government agents ignored "no trespassing" signs, walked around a locked gate, and travelled a mile onto private property before discovering a field of marijuana. Similarly, in *Dunn*, the Court approved the actions of Drug Enforcement Agency officials that had crossed over five fences, some of them made of barbed wire, walked up to a barn and peered inside it. Upon observing what the officials thought to be a phenylacetone laboratory, the officials left the property, obtained a warrant

from a magistrate, and returned to the property to execute the warrant. The actions in walking up to the barn were valid under the open fields doctrine. *Id.* Thus, it appears that government agents may make warrantless entries upon private property, even though their actions could be trespassory.

However, as noted previously, the government's action in this case went beyond a mere observational search of the property. The defendants in this case seized soil and water samples and removed them from the property for further testing. The plaintiff focuses on this fact to correctly distinguish cases such as *Oliver* and *Dunn*, which involved nothing more than walking onto an open field as observing what could be observed. The plaintiff would limit the open fields cases to situations involving mere visual or observational inspection and urges that because the Team exceeded that in this case, a constitutional violation has occurred.

The plaintiff's position is not without support. In *Husband v. Bryan*, 946 F.2d 27, 29 (5th Cir.1991), the court recognized a reasonable expectation of privacy in the land under an open field. A sheriff and his deputy had obtained a warrant to search a gravel-filled well for the body of a murder victim. After looking unsuccessfully in the well for the body, the sheriff and his deputy, using a bulldozer, proceeded to dig up about three acres of plaintiff's land. *Id.* at 28. The Fifth Circuit noted that neither it, nor the Supreme Court, had ever extended the open fields doctrine to anything beyond observational searches and, therefore, found that the sheriff and his deputy violated plaintiff's rights. *Id.* at 29.

Other circuits, however, appear to conclude to the contrary.[4] The two cases that are most applicable here, and support the defen-

---

**3.** *Donovan*, and *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), represent a line of cases dealing with the constitutionality of entry and inspection provisions of public laws. These cases usually involve a government agent acting pursuant to statutory authority in the inspection of a place of business. *See, e.g., Donovan*, 452 U.S. at 596–97, 101 S.Ct. at 2536–37; *See*, 387 U.S. at 541–42, 87 S.Ct. at 1737–39. Because the amended complaint alleges the failure to follow established statutory procedures, this line of cases is inapplicable.

**4.** Both parties cite *United States v. Wright*, 991 F.2d 1182 (4th Cir.1993), in support of their positions. *Wright* was an open fields case, but as the defendants admit in their reply brief, the issue of seizures of items from open fields was not before the court. Based upon my reading of the district court opinion and the court of appeals opinion, I agree that *Wright* is not dispositive of the issue presented here.

dants' position, are *United States v. Fahey*, 769 F.2d 829 (1st Cir.1985), and *United States v. Carasis*, 863 F.2d 615 (8th Cir. 1988). Both of these cases involved the taking of relatively small samples from an open field. Both of the courts held that the warrantless seizure of the samples did not violate the Fourth Amendment. Thus, the courts necessarily concluded that there was no legitimate expectation of privacy in the land beneath an open field.

■ Given the seeming split in authority, an analysis of first principles is necessary. Specifically, does plaintiff have a "constitutionally protected reasonable expectation of privacy" in the soil beneath the surface of the open field? To answer this question in the affirmative, a person must have "exhibited an actual expectation of privacy and that the expectation be one that society recognizes as reasonable." *United States v. Mehra*, 824 F.2d 297, 298 (4th Cir.) (quoting *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)), *cert. denied*, 484 U.S. 915, 108 S.Ct. 263, 98 L.Ed.2d 220 (1987). Various factors inform this decision. The intent of the framers of the Constitution is relevant. *Oliver*, 466 U.S. at 178, 104 S.Ct. at 1741. So too are the uses to which the individual put the property and the societal understanding that certain areas deserve scrupulous protection from government intrusion. *Id.*

The plaintiff here has "placed" rubber compounds on the property upon which the Team entered. While the term "placed" is a general term, it is fairly inferable from the facts plead that the items were buried under the property at some point, as opposed to poured onto the ground or stacked on top of the ground. The Team's actions appear directed at determining what materials were buried at the site and whether any contaminants from the materials had leaked over the years. That is apparently the reason the soil and water samples were taken.

These actions indicate an "actual expectation of privacy" in the things buried—the

rubber compound materials. Plaintiff placed the rubber materials on property it subsequently purchased and owned at the time of the Team's invasion. Clearly, plaintiff knew where the items were buried and intended to maintain the location privately. *See California v. Greenwood*, 486 U.S. 35, 40, 108 S.Ct. 1625, 1628–29, 100 L.Ed.2d 30 (1988) (exposing items to public is indication that no reasonable expectation of privacy exists).[5] This expectation is one society is prepared to recognize as reasonable. While the activity admittedly occurred in an open field, *cf. United States v. Ramapuram*, 632 F.2d 1149, 1155 (4th Cir.1980) (no violation where agents searched unlocked trunk of abandoned car parked in an open field owned by defendant's father), *cert. denied*, 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981), the activity in question was one designed to conceal the existence of the rubber compounds from the general public. Plaintiff did not intend to grant access to the items buried to a third party; indeed, it subsequently bought the land on which it buried the material. *Cf. Greenwood*, 486 U.S. at 41, 108 S.Ct. at 1629–30. If a person buries items on his own property, I believe that person has a right of privacy in the thing buried. The government may not conduct a warrantless search for those items.

To the extent that there is an expectation of privacy in the thing buried, there must also be an expectation of privacy in the soil or water that may reveal the presence of the thing buried. If this were not the case, then the right to privacy in the thing buried would not be scrupulously protected. *See Oliver*, 466 U.S. at 178, 104 S.Ct. at 1741.

A hypothetical scenario assists in explaining this conclusion. Suppose a bank robber goes out to a field she owns and buries the proceeds of her robbery. Police later enter on the field and note the fresh disturbance of dirt. Without a warrant, they take some of the dirt from the area to a lab to test it for traces of the die pack they knew exploded as the robber left the bank. Just as the war-

---

**5.** The amended complaint indicates that the Commonwealth of Virginia was involved in some manner in the closing of the property as a waste disposal site. While this may lessen the expectation of privacy somewhat, it does not destroy it. *Cf. Donovan*, 452 U.S. at 598, 101 S.Ct. at 2537–38 (commercial activity generally involves lower expectation of privacy).

rantless search and seizure of the dirt in the bank robber case would be unconstitutional, so to is the action of the Team here. Thus, I concur with the conclusion of the Fifth Circuit in *Husband,* although I reach that conclusion by a slightly different analysis.[6]

Furthermore, I find the First and Eighth Circuit cases distinguishable. In *Fahey,* the samples taken were to determine the true content of gold in a mine, the owners having mislead others in an investment scheme concerning the property. *Fahey,* 769 F.2d at 832–33, 837–38. *Fahey* differs from this case in two respects. First, the government was attempting to determine the existence of an item nature had placed in the mine, not any person or entity as in this case. Second, the activity involved in *Fahey* was mining. The activity in this case involves burying and disposing of things. The former is an activity designed to uncover, and is like the cultivation of crops the *Oliver* Court felt deserved no constitutional protection. *Fahey,* 769 F.2d at 838 (citing *Oliver* ). The latter is an activity designed to cover-up. As noted above, this is not a distinction without a difference for it goes to the issue of a legitimate expectation of privacy.

The *Carasis* case is similarly inapplicable. In that case, agents observed an outdoor trash pile and removed "a sample of [a] dark colored waste substance ... from the ground." *Carasis,* 863 F.2d at 616. A chemical analysis of the sample, in addition to other observations made during the entry of the open field, supplied the probable cause required for a search warrant. *Id.* at 617. This case is distinguishable because it concerns garbage. The Supreme Court has held that refuse deposited at the curbside is not entitled to Fourth Amendment protection because there is no expectation of privacy. *Greenwood,* 486 U.S. at 39, 108 S.Ct. at 1628. The "dark colored waste substance" was merely a by-product of the nearby trash pile. If there is no expectation of privacy in the trash pile itself, there could be no expectation of privacy in the by-product of that pile.

*Carasis,* therefore, provides no shelter for the Team's invasion of plaintiff's property.

*Individual Defendants*

Now that a violation of the Fourth Amendment exists, the case proceeds down two separate paths. One path applies to the EPA and the individual defendants in their official capacities. That aspect will be addressed in the last section. The other path is the individual defendants in their individual capacities. That is the issue to which I now turn.

■ I would note first in passing that the Court has personal jurisdiction over the management defendants. The amended complaint alleges that they failed to properly carry out their duties in the implementation of EPA policies and training, including the training of EPA Response Teams of the type that violated defendant's constitutional rights. These allegations are sufficient to convey personal jurisdiction over the defendants. *See Employer's Ins. of Wausau v. Bush,* 791 F.Supp. 1314, 1323 (N.D.Ill.1992) (finding that court had personal jurisdiction over EPA Administrator based upon Administrator's official actions that affected forum).

■ I turn now to the question of qualified immunity for the Team members and the management defendants. Government officials exercising discretionary functions are entitled to qualified immunity if the officer's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). " 'In determining whether the specific right allegedly violated was "clearly established," the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged.' " *Wiley v. Doory,* 14 F.3d 993, 995 (4th Cir.1994) (Powell, J.) (quoting *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir.1992)). In particular,

---

**6.** This case should be distinguished from situations where government agents take things from the surface of the land. *See, e.g., Patler v. Slayton,* 503 F.2d 472, 477–78 (4th Cir.1974) (spent bullets and shell casings from pasture). In those situations, the persons that have placed the objects there have not taken any unusual steps to protect the privacy of their activities in the open field.

"if there is a 'legitimate question' as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity." *Wiley*, 14 F.3d at 995.

The right allegedly violated in this case is the freedom from an unreasonable search and seizure. Like the right to due process, the protection against unreasonable searches and seizures is certainly clearly established. But analyzing the right violated on this level of abstraction effectively deprives the qualified immunity doctrine of any force whatsoever. *Cf. Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987). On the other hand, the doctrine does not require a prior ruling on the exact same actions. *Id.* at 640, 107 S.Ct. at 3039. The fact that I have concluded a Fourth Amendment violation occurred does not alter the fact that the right violated—the intrusion into the land beneath the surface of an open field—may not have been clearly established at the time the individual defendants acted. *Tarantino v. Baker*, 825 F.2d 772, 774 (4th Cir.1987).

■ I believe that while a violation occurred in this instance, the plaintiff's right to be free of that violation was not "clearly established" within the meaning of *Harlow*. As noted earlier, it is absolutely clear that the Team members' presence on the plaintiff's open field implicated no constitutional right. Supreme Court precedent holds that there is no legitimate expectation of privacy in open fields. *Dunn*, 480 U.S. at 303–04, 107 S.Ct. at 1140–41; *Oliver*, 466 U.S. at 177, 104 S.Ct. at 1740–41; *Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924). But the Supreme Court is silent as to intrusions beyond the open field. As to circuit court authority, I have already noted the apparent split on this very issue. Even the case whose outcome is in the plaintiff's favor, *Husband*, is such an extreme and outrageous violation of Fourth Amendment rights that it provides little guidance to government officers in the situation presented

here: soil sampling for later chemical analysis off-site.[7] Furthermore, if the Team members are entitled to qualified immunity for their actions, then the management defendants must necessarily be entitled to qualified immunity. They would have no reason to believe that their training and other policies would lead to violations of clearly established constitutional rights.

Therefore, I conclude that while the government's action here violated plaintiff's rights, the right violated was not clearly established at the time. The immunity analysis need go no further in order to determine that the individual defendants are entitled to qualified immunity in this case. *See Siegert v. Gilley*, 500 U.S. 226, 231–33, 111 S.Ct. 1789, 1792–94, 114 L.Ed.2d 277 (1991) (holding that whether right was clearly established is threshold inquiry in analysis); *Di-Meglio v. Haines*, 45 F.3d 790, 795–803 (4th Cir.1995) (discussing *Siegert* and concluding similarly).

*EPA and Official Capacity Defendants*

**Statutory Claim**

■ The EPA and the individual defendants in their official capacities seek to dismiss the case on several grounds. One ground I find well-taken is the argument that the citizen suit provisions of CERCLA have not been complied with, thus justifying the dismissal of plaintiff's claim of a statutory violation.

CERCLA provides, in pertinent part, that:

No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title. . . .

---

7. Cases involving intrusion into structures in open fields likewise do not assist in the creation of a clearly established right against the government's action here. *Compare United States v. Wright*, 991 F.2d 1182 (4th Cir.1993) *and Allin-*

*der v. Ohio*, 808 F.2d 1180 (6th Cir.), *app. dismissed*, 481 U.S. 1065, 107 S.Ct. 2455, 95 L.Ed.2d 865 (1987) *with Care v. United States*, 231 F.2d 22 (10th Cir.), *cert. denied*, 351 U.S. 932, 76 S.Ct. 788, 100 L.Ed. 1461 (1956).

42 U.S.C.A. § 9613(h) (West Supp.1994). CERCLA goes on to provide, however, five specific exceptions to the general rule. The only one potentially relevant in this case provides:

> An action under section 9659 of this title (relating to citizen suits) alleging that the removal or remedial action *taken* under section 9604 of this title or *secured* under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to removal where a remedial action is to be undertaken at the site.

*Id.* § 9613(h)(4) (emphasis added). The defendant argues, and the plaintiff does not dispute, that the Team's action here meets the definition of "removal" contained in 42 U.S.C.A. § 9601(23). Section 9604(e) authorizes the entry and inspection the Team conducted. Thus, defendant argues that the Team's conduct is a "removal ... action selected under section 9604" of CERCLA and this Court is without jurisdiction to hear the lawsuit unless plaintiff complies with the jurisdictional prerequisites to a citizen suit.

Plaintiff responds that the legislative intent behind section 9613(h) is to prevent pre-enforcement litigation of actions the EPA takes. *Barmet Aluminum Corp. v. Reilly,* 927 F.2d 289, 292–93 (6th Cir.1991). The section is further designed to prevent piecemeal litigation. *Id.* at 293. Neither of those concerns are presented in this case, says the plaintiff. The Consent Order entered earlier in this case indicates that the soil samples tested negative and that the EPA does not plan on taking any further response action. Thus, concludes plaintiff, this is a "post event" review of EPA action that section 9613(h) was not intended to prevent.

It certainly appears that the EPA violated the statutory procedures for entry and inspection of private property. The EPA should have sought consent, 42 U.S.C.A. § 9604(e)(5)(A); if consent was not obtained, EPA should have sought an administrative or court order compelling the entry and/or inspection, *id.* § 9604(e)(5)(A), (B); the EPA should have given the property owner a receipt for the soil samples it took, *id.* § 9604(e)(4)(B). The EPA did none of this.

Instead, the amended complaint indicates EPA adopted a "don't ask, don't tell" policy. In light of such a policy, it is not surprising that, as defendant's counsel suggested at oral argument, but for Mr. Mace, the plaintiff would never have known the Team had searched its property. It seems to be exactly this situation that section 9604(e) is designed to prevent.

Unfortunately for plaintiff, however, this apparent violation appears to be exactly the type of conduct section 9613(h) contemplates being challenged via the citizen suit procedures. This is a "removal action" undertaken pursuant to section 9604 that the plaintiff contends "was in violation of any requirement of this chapter." *Id.* § 9604(h)(4). Plaintiff apparently concedes it did not follow the prerequisites to a citizen suit and that those prerequisites would bar this action. *See id.* § 9659(d)(1); *Hallstrom v. Tillamook County,* 493 U.S. 20, 26–27, 110 S.Ct. 304, 308–09, 107 L.Ed.2d 237 (1989) (interpreting nearly identical provision in Resource Conservation and Recovery Act). Moreover, the only cause of action provided under section 9604(e) is to the United States. 42 U.S.C.A. § 9604(e)(5)(B). The plaintiff has not sought to argue that an implied right of action exists and thus plaintiff's challenge here would have to be under section 9613(h).

■ The analysis is not changed simply because the EPA appears to be done with the plaintiff's property. The language of section 9613(h)(4) is phrased in the past tense. It applies to actions "taken" or "secured." CERCLA's plain language indicates that section 9613(h)'s prohibition against federal court jurisdiction continues even after remedial or removal action has occurred in this context. *See Schalk v. Reilly,* 900 F.2d 1091, 1095 (7th Cir.), *cert. denied,* 498 U.S. 981, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990); *Alabama v. U.S.E.P.A.,* 871 F.2d 1548, 1557–58 (11th Cir.), *cert. denied,* 493 U.S. 991, 110 S.Ct. 538, 107 L.Ed.2d 535 (1989). Section 9613(h)(3) buttresses this conclusion. It applies to reimbursement actions pursuant to section 9606(b)(2). A party seeking "reimbursement" is by definition a party that has already expended some money on a waste site. If section 9613(h) were to apply to only

preclean-up actions, section 9613(h)(3) loses much of its significance. Accordingly, if the plaintiff seeks redress for violations of the statutory scheme, the plaintiff must follow the mechanism the statute provides.[8] Its failure to do so warrants dismissal.

### Constitutional Claim

■ While section 9613(h)'s prohibition clearly precludes statutory claims, it does not extend to constitutional challenges to the actions of the EPA in executing the statute's commands. Plaintiff correctly points out that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988).

I find *Reardon v. United States,* 947 F.2d 1509 (1st Cir.1991), instructive. The court held that section 9613(h) did not deprive it of jurisdiction to review a constitutional challenge to the statute itself. *Id.* at 1515. In so doing, it drew a distinction between challenges to the constitutionality of the statute itself and a challenge to the constitutionality of the EPA's administration of the statute. The court noted that the latter may well be included within section 9613(h)'s bar. *Id.; see also Johnson v. Robison,* 415 U.S. 361, 366–67, 94 S.Ct. 1160, 1165–66, 39 L.Ed.2d 389 (1974) (drawing similar distinction). The First Circuit's discussion of the administration situation was purely dicta, however, as that question was not before the court. Indeed, the court went on to suggest that "general collateral challenges to unconstitutional practices and procedures" used by an agency in carrying out a statute may not be barred. *Reardon,* 947 F.2d at 1517 (quoting *McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479, 492, 111 S.Ct. 888, 896, 112 L.Ed.2d 1005 (1991)).

The challenge in this case includes the allegation that EPA Region III has adopted a policy or practice of warrantless searches of private property. It is fairly inferable from the complaint that EPA personnel in Region III do not see anything wrong with this policy and thus it will continue into the future. Clearly, this addresses the administration of the statute. Arguably, it could be within the "any challenges" to which section 9613(h) refers. But to interpret CERCLA in this manner and thereby prevent any review of the constitutionality of EPA's administrative actions would in itself raise serious constitutional questions. *See Johnson,* 415 U.S. at 366, 94 S.Ct. at 1165. The reading that avoids the constitutional implications is to limit the challenges to actions taken under sections 9604 and 9606. The language of 9613(h) supports this reading because it deprives district courts of jurisdiction only as to challenges of "removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) . . . ."

Further support for this conclusion is found in *Reardon* and *McNary.* The statute the *McNary* court interpreted is similar to section 9613(h). *Reardon,* 947 F.2d at 1517 (comparing statutory provisions). The Court in *McNary* addressed a provision of the Immigration Reform and Control Act of 1986. That statute, the Court held, could not be read to prevent the review of plaintiff's allegation that the Immigration and Naturalization Service used unconstitutional policies and practices to process individual applications for a special amnesty program. *McNary,* 498 U.S. at 492, 111 S.Ct. at 896. Similarly, section 9613(h) should not be read to prevent a constitutional challenge to the agency's execution of CERCLA.

This conclusion is reinforced by the practical realization that, in this case, denying plaintiff review in this proceeding would prevent any court review whatsoever. There are no other alternatives. The mechanism section 9604(e)(5) provides is unavailable because EPA ignored its requirements. *Cf. South Macomb Disposal Auth. v. U.S.E.P.A.,* 681 F.Supp. 1244, 1251 (E.D.Mich.1988) (noting alternative use of section 9604(e) as a means to raise constitutional issue). The citizen suit provision that is available for plaintiff's statutory claims does not appear to

---

**8.** Thus, contrary to the plaintiff's protestations, while they are deprived of a means to review the EPA's action here, that deprivation is attributable to their failure to comply with statutory requirements.

be available for his constitutional claims. *See* 42 U.S.C.A. § 9659(a) (discussing what actions can be challenged in a citizen suit).

**Justiciability**

Having found that CERCLA does not bar plaintiff's constitutional claim brings me to the final objection EPA raises. Defendant argues that because the Consent Order entered earlier in this litigation provided plaintiff full relief, their claims against EPA for a permanent injunction is moot/nonjusticiable. To the extent there is no basis for injunctive relief, the request for declaratory relief also fails. *See CATA v. United States Dep't of Labor*, 995 F.2d 510 (4th Cir.1993). Finally, they argue that the Court should withhold injunctive and declaratory relief for prudential reasons. *See S–1 v. Spangler*, 832 F.2d 294, 297 (4th Cir.1987).

■ I will not venture into an extended discussion of these precedents for the simple reason that EPA's basic assumption is incorrect. The arguments on justiciability rely upon EPA's view of the Consent Order. That view is fundamentally flawed. The Consent Order is, as plaintiff correctly characterizes it, in the nature of a preliminary injunction. It was entered in response to the plaintiff's filing a motion for a preliminary injunction and for expedited discovery. The Consent Order recites those filings at the outset. It also explicitly states that it is entered "pending the ultimate resolution of the case." In particular, EPA's reliance upon paragraph 5 of the Consent Order is singularly unpersuasive. That paragraph requires the EPA to act within the dictates of the Constitution and CERCLA in the future. This only begs the question presented in this case which is whether the EPA's alleged policy of warrantless inspections, in violation of the statute, is in fact a violation of the Fourth Amendment. There is a live controversy in this case surrounding that issue, and the plaintiff continues to seek a permanent injunction. The fact that a permanent injunction request exists, and is not moot in light of the Consent Order, provides the "further concrete relief" required by *CATA* to sustain the declaratory judgment request. 995 F.2d at 513. Likewise, I find no ground

exists to withhold relief on prudential grounds. *Cf. Spangler*, 832 F.2d at 297.

CONCLUSION:

While plaintiff has established a violation of the Fourth Amendment, that right was not clearly established at the time of the individual defendants' actions. Thus, qualified immunity applies, and the individual defendants must be dismissed. As to the EPA and the individuals in their official capacities, I concur with the government's argument that section 9613(h) bars review outside the citizen suit procedure established in 42 U.S.C.A. § 9659 for the statutory claim. It does not do so for the constitutional claim, and that claim is not moot. Accordingly, the case will proceed on the constitutional claim against the EPA and the official capacity defendants.

An appropriate order will be entered.

*ORDER*

For the reasons stated in the Memorandum Opinion issued contemporaneously herewith, it is hereby ADJUDGED and ORDERED that:

1. the motion to dismiss of defendant United States Environmental Protection Agency (docket entry 18) is hereby GRANTED in part and DENIED in part in that the statutory claim is DISMISSED with prejudice;

2. the motion to dismiss of defendants Browner, et al., in their individual capacities (docket entry 19) is hereby GRANTED with respect to their individual capacities, but DENIED with respect to their official capacities;

3. the motion to dismiss of defendants Melvin, et al., in their individual capacities (docket entry 20) is hereby GRANTED with respect to their individual capacities, but DENIED with respect to their official capacities; and

4. the plaintiff's motion to extend time (docket entry 23) is hereby DISMISSED as moot.

The Clerk is directed to send a certified copy of this Order and the accompanying

Memorandum Opinion to all counsel of record.