**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PRESSLEY RIDGE SCHOOLS, a
Pennsylvania corporation,
<u>Plaintiff-Appellee,</u>

v.

R. PHILIP SHIMER, Acting

Commissioner, West Virginia
Bureau for Medical Services;
GRETCHEN O. LEWIS, Secretary,
Department of Health & Human
Resources,
<u>Defendants-Appellants.</u>

No. 97-1049

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CA-95-970-2)

Argued: December 4, 1997

Decided: January 27, 1998

Before MURNAGHAN and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Dismissed by published opinion. Judge Motz wrote the opinion, in
which Judge Murnaghan and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** Stephen Jay Small, Senior Assistant Attorney General,
BUREAU FOR MEDICAL SERVICES, Charleston, West Virginia,

for Appellants. Charles Marvin Johnson, Jr., Charleston, West Virginia, for Appellee. **ON BRIEF:** Darrell V. McGraw, Jr., Attorney General, BUREAU FOR MEDICAL SERVICES, Charleston, West Virginia, for Appellants. David R. Bungard, Charleston, West Virginia, for Appellee.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Two West Virginia officials attempt to appeal the district court's judgment holding that the State violated Medicaid regulations and the Due Process and Equal Protection clauses of the United States Constitution in handling various Medicaid claims submitted by a Medicaid provider. Subsequent to the district court's decision, the parties entered into a written settlement agreement, which at their request the district court entered as a consent order. Pursuant to the settlement agreement, the parties purported to permit the State to appeal two issues. However, because the settlement agreement renders this case moot, we must dismiss the appeal.

I.

Pressley Ridge Schools, Inc. (Pressley Ridge), a nonprofit corporation providing behavioral health care services to children, entered into an agreement with the Bureau for Medical Services (the Bureau), the state agency responsible for implementing, overseeing and regulating the Medicaid program in West Virginia, authorizing Pressley Ridge to participate as a Medicaid provider. Pressley Ridge thus became eligible to receive reimbursement through the Bureau for behavioral health services rendered to Medicaid-eligible clients in West Virginia. As a Medicaid provider, Pressley Ridge agreed to make all of its records and documents available and to participate in evaluations and audits authorized by the State Department of Health and Human Resources (the Department) to ensure that Pressley Ridge's services and program complied with the applicable Medicaid regulations. The Department, in turn, agreed to provide an appeal process permitting Pressley Ridge to challenge any adverse decisions by the Department.

2

In August 1995, the Bureau informed Pressley Ridge that all Medicaid reimbursements to it would be suspended indefinitely. The Bureau conducted an on-site review of Pressley Ridge for all Medicaid services billed from January 1 through June 20, 1995, and disallowed reimbursement to Pressley Ridge for those services due to lack of "quantified baseline data" in Pressley Ridge's behavior management plans. The Bureau also instituted a prepayment review for Medicaid claims made by Pressley Ridge for services delivered after October 31, 1995.

Pressley Ridge then brought this action in which it sought various forms of injunctive relief. Specifically, Pressley Ridge asked the district court to order the State to reimburse Pressley Ridge for behavior management services it had already provided to Medicaid-eligible clients and to prohibit the State from adopting the prepayment review procedure without notice or hearing. After a four day bench trial, the district court granted Pressley Ridge the requested injunctive relief. The court reasoned that the Bureau's requirement of "quantified baseline data" did not accord with the requirements set forth in the Bureau's Medicaid Provider Manual and, therefore, violated federal regulations requiring the Bureau to provide for notice and comment of "any significant proposed change in its methods and standards for setting payment rates for services." 42 C.F.R.§ 447.205. In addition, the court ruled that the State's institution of prepayment review of Pressley Ridge's behavior management services, without notice or hearing, violated state and federal regulations. Finally, the court held that these regulatory violations denied Pressley Ridge its constitutional Due Process and Equal Protection rights.

The State noted an appeal. While the appeal was pending, but before the case had been briefed or argued, the parties entered into a written settlement agreement. The agreement settled "all disputed claims" between the parties with regard to the adequacy of the services provided by Pressley Ridge for the periods in question, and determined how Pressley Ridge would be compensated for past and future behavior management services provided to Medicaid-eligible clients in West Virginia. The agreement purported to permit the State to maintain an appeal as to whether the Bureau must submit its requirement of "quantitative baseline data" to "notice and comment" before it was utilized, and whether the Bureau must provide an

3

administrative review hearing upon adopting prepayment review. The settlement agreement stated, however, that "[r]egardless of the outcome of any appeal, the financial impact of this agreement shall remain intact."

II.

On appeal, the State attempts to challenge the district court's holding that it violated Pressley Ridge's rights by retroactively applying quantitative baseline data to behavior management plans submitted by Pressley Ridge and by refusing to grant Pressley Ridge an administrative hearing to appeal the State's decision to impose prepayment review. Because the parties have entered into a settlement, however, no live dispute between them currently exists. Accordingly, we lack jurisdiction to consider this case.

Article III of the United States Constitution limits the jurisdiction of the federal courts to "actual, ongoing controversies." Honig v. Doe, 484 U.S. 305, 317 (1988); see U.S. Const. art. III, § 2, cl. 1. "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time a complaint is filed." Arizonans for Official English v. Arizona, ___ U.S. ___, 117 S. Ct. 1055, 1068 (1997) (citation and internal quotation omitted). Thus, a federal court has no "power to render advisory opinions [or] . . . decide questions that cannot affect the rights of litigants in the case before them." Honig, 484 U.S. at 317; see also Preiser v. Newkirk, 422 U.S. 395, 401 (1975).

At oral argument, the State cited two cases assertedly supporting its contention that, despite the settlement agreement, the issues raised in this appeal are not moot. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 369 (1982); Reeves Bros., Inc. v. United States Envtl. Protection Agency, 956 F. Supp. 665, 675 (W.D. Va. 1995). Both cases are clearly distinguishable from the one at hand. In Havens, although the parties had entered into a settlement agreement,"one of the parties continue[d] to seek damages" and the agreement simply set forth a means to liquidate those damages. 455 U.S. at 371. The Supreme Court concluded that "[g]iven respondents' continued active pursuit of monetary relief, this case remains `definite and concrete, touching the legal relations of parties having adverse legal interests.'" Id.

4

(quoting Aetna Life Ins., Co. v. Haworth, 300 U.S. 227, 240-41 (1937)). Similarly, in Reeves Bros., although the parties entered into a consent order, the order was "in the nature of a preliminary injunction" and explicitly stated that its enforcement was entered "pending the ultimate resolution of the case." 956 F. Supp. at 675. The plaintiff continued to seek a permanent injunction and, for this reason, the court concluded that the parties sought "further concrete relief," creating "a live controversy." Id.

Unlike Havens and Reeves Bros., here no party seeks any further concrete relief. No live dispute between the parties exists as to either prepayment review or quantitative baseline data. The settlement agreement expressly states that "[i]n lieu of prepayment review as to claims submitted by Pressley Ridge . . . [the Bureau] agrees to conduct a technical or post-payment, compliance review." Similarly, the agreement establishes that the parties have totally settled their disagreement regarding the requirement of quantitative data.

Nor does this appeal involve issues "capable of repetition, yet evading review." In such cases, a court can address issues despite their apparent mootness. See Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 546 (1975). Here, prior to trial, the Bureau amended its regulations to require that quantitative baseline data be included in behavior management plans in order to qualify for Medicaid reimbursement. This change obviously diminishes the potential for repetition of the dispute that brought about this litigation. Moreover, as the State quite properly conceded at oral argument, the issues in this case are not the sort that would evade judicial review because of their short-lived nature. Cf. id. at 546-47 (since restrictive orders in question were "by nature short-lived," they would evade judicial review if Court declined to address them on mootness grounds).

For these reasons, we lack jurisdiction over this case and must dismiss the appeal.

III.

The State asks that, if we determine that the issues raised on appeal are moot, we vacate the district court's judgment. It wishes to elimi-

5

nate the precedent established by the district court. <u>See</u> Brief of Appellants at 10.

Generally, when a case becomes moot on appeal, an appellate court vacates the judgment below. <u>See, e.g.</u>, <u>Arizonans For Official English</u>, 117 S. Ct. at 1071. Vacatur "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented by happenstance." <u>United States v. Munsingwear, Inc.</u>, 340 U.S. 36, 39 (1950). Recently, however, in <u>U.S. Bancorp Mortgage Co. v. Bonner</u>, 513 U.S. 18, 23 (1994), the Supreme Court "clarified that vacatur is an equitable remedy, not an automatic right." <u>National Black Police Ass'n v. District of Columbia</u>, 108 F.3d 346, 351 (D.C. Cir. 1997).

In <u>U.S. Bancorp</u>, the parties settled their dispute but specifically agreed to seek vacatur of the lower court judgment. The Supreme Court refused to provide this relief, reasoning that to grant vacatur as a matter of course in such instances would be to regard "judicial precedents" as "the property of private litigants" and "would -- quite apart from any considerations of fairness to the parties -- disturb the orderly operation of the federal judicial system." <u>U.S. Bancorp</u>, 513 U.S. at 27. The Court held that "mootness by reason of settlement does not justify vacation of a judgment under review." <u>Id</u>. at 29. The Court explained:

> Where mootness results from settlement . . . the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable doctrine of vacatur.

<u>Id</u>. at 25. Thus, barring "exceptional circumstances," an appellate court should not vacate the judgment of a trial court at the behest of a losing party that has mooted a case by agreeing to settle it. <u>Id</u>. at 29.

In our view, the case at hand presents no "exceptional circumstances" and the parties have suggested none. Rather, as in <u>U.S. Bancorp</u>, mootness in this case resulted from the losing party's decision to settle the case. By doing so, that party (the State) "surrender-[ed] [its] claim to the equitable remedy of vacatur." <u>Id</u>. at 25; <u>cf</u>.

6

<u>Motta v. District Dir. of I.N.S.</u>, 61 F.3d 117, 119 (1st Cir. 1995) (court found special circumstances rendering vacatur of lower court's judgment proper because parties had only agreed to settlement at prompting of First Circuit itself).

We note, however, that in <u>U.S. Bancorp</u>, the Supreme Court concluded with the following comment:

> Of course even in the absence of, or before considering the existence of, extraordinary circumstances, a court of appeals presented with a request for vacatur of a district-court judgment may remand the case with instructions that the district court consider the request, which it may do pursuant to Federal Rule of Civil Procedure 60(b).

<u>U.S. Bancorp</u>, 513 U.S. at 28. Given that the State has not requested this precise relief, we will not remand with specific instructions that the district court consider a request for vacatur. But, because neither side seems cognizant of <u>U.S. Bancorp</u> or its teachings, we do observe that our dismissal of this appeal is without prejudice to the right of any party to move the district court, under Federal Rule of Civil Procedure 60(b), to vacate its judgment. <u>See Nahrebeski v. Cincinnati Milacron Mktg. Co.</u>, 41 F.3d 1221, 1222 (8th Cir. 1994).

<u>DISMISSED</u>

7