UNITED STATES of America,
Plaintiff,

v.

CITY OF FORT LAUDERDALE,
et al., Defendants.

No. 98–6982–CIV.

United States District Court,
S.D. Florida.

Dec. 28, 1999.

Robert Rosenberg, United States Attorney's Office, Fort Lauderdale, FL, for United States.

Hollister A. Hill, City Attorney's Office, Fort Lauderdale, FL, for City of Fort Lauderdale, Florida.

### OMNIBUS ORDER and ORDER GRANTING MOTION TO ENTER CONSENT DECREE

DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon the various standing-related motions filed by the parties and non-parties and United States' Motion to Enter Consent Decree [DE 20]. The Court has carefully considered the motions and has heard the argument of counsel at a December 21, 1999 hearing on the pending motions.

1. The City of Fort Lauderdale [DE 24] and the Wingate Road Superfund Group ("Wingate

## I. BACKGROUND

This case involves a proposed settlement of an action brought by the United States of America under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") against the City of Fort Lauderdale ("City") and over 30 other private and governmental entities for alleged dumping of wastes at the Wingate Landfill site ("Wingate") in Fort Lauderdale, Florida. The parties to this lawsuit agreed upon a consent decree to begin a remedial action to clean up Wingate, including an agreement as to payments totaling about $20 million from the various defendants to pay for the remedial action. [DE 22]. Plaintiff United States moved for entry of the consent decree following the required public comment period. [DE 20]. Many defendants have filed memoranda in support of entry of the consent decree.[1]

Several non-parties, including an organization, Bass–Dillard Neighborhood Issues and Prevention, Inc., and individuals Curtis Brown, Carolyn Young, and Hamilton Forman, filed motions to be heard in the case [DE 7, 9, 45], and filed oppositions to the United States' motion to enter the consent decree. [DE 30, 45]. The United States, the City and the Wingate Group filed motions to strike the oppositions to the motion to enter. [DE 31, 35, 40, 48]. The Court held a two-part hearing on December 21, 1999, including an hour of argument on the standing related motions and a second hour on the motion to enter the consent decree.

## II. DISCUSSION

### A. Standing–Related Issues

The threshold issue raised by the standing-related motions is whether the non-parties identified above have a right to participate in this lawsuit at this time.

Group") (consisting of 32 settling Defendants) [DE 25] filed these memoranda.

None of the non-parties have moved to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure. Moreover, none of the non-parties have cited to any other potential basis to participate in a lawsuit under other limited circumstances allowed by the Federal Rules. *United States of America v. City of North Miami Beach,* Case No. 91–2834–CIV–MARCUS, docket entry 98 at pp. 7–9, (S.D.Fla. filed December 12, 1991) (hereinafter *"North Miami Beach "*).

■ Even putting aside the constitutional and prudential limitations that the United States Supreme Court's standing doctrines place upon the exercise of federal jurisdiction that may bar the non-parties' ability to show they have standing to participate in this case (*see generally North Miami Beach* at pp. 11–12), CERCLA contains a statutory bar to public participation in federal court at this point in time. CERCLA provides that "no federal court shall have jurisdiction under federal law ... [exceptions not relevant here] ... to review any challenges to removal or remedial action selected under section 9604 of this title ... in any action except one of the following...." 42 U.S.C. § 9613(h) (the non-parties do not argue that any listed exceptions are applicable to this case). Even when such jurisdiction is allowed under subsection (4), the citizen suit exception to Section 9613(h), the United States Court of Appeal for the Eleventh Circuit has interpreted this jurisdictional limitation to apply "only after a remedial action is actually completed." *State of Alabama v. United States Environmental Protection Agency,* 871 F.2d 1548, 1557 (11th Cir.1989), *cert. denied,* 493 U.S. 991,

110 S.Ct. 538, 107 L.Ed.2d 535 (1989). Thus, judicial review to challenge a proposed remedial action is delayed until all activities in the Environmental Protection Agency's Record of Decision for the surface cleanup phase have been completed. *Id., citing* H.Conf.Rep. No. 962, 99th Cong., 2d Sess. 224, reprinted in 1986 U.S.Code Cong. & Admin.News 2835, 3317; see also *Dickerson v. Administrator, E.P.A.,* 834 F.2d 974, 977–978 (11th Cir.1987)[2]. Thus, the non-parties cannot assert standing under CERCLA at this point in time.

### B. Motion to Enter Consent Decree

Although this Court cannot find that the non-parties have standing in this case, the matters raised by the non-parties in their filings and at the hearing held by this Court are significant and require this Court's close and careful scrutiny. *North Miami Beach* at p. 16. In this Circuit the Court's role is limited at this juncture to determining whether the terms of the consent decree "are not unlawful, unreasonable, or inequitable." *United States v. City of Jackson,* 519 F.2d 1147, 1151 (5th Cir.1975)[3]; *U.S. v. BASF–INMONT Corp.,* 819 F.Supp. 601, 608 (E.D.Mich. 1993) (Sixth Circuit cases cited therein). Applying this standard to the CERCLA context, the Court looks to compliance with CERCLA, the reasonableness of the consent decree, and whether the decree is inadequate to protect public health and the environment. However, this Court cannot tinker with the consent decree, and must either accept or reject the terms. *BASF– INMONT Corp.,* 819 F.Supp. at 608. Moreover, this Court may not substitute

---

**2.** One of the decisions cited by the non-parties in support of its motion to be heard, *United States v. Princeton Gamma–Tech, Inc.,* 31 F.3d 138 (3rd Cir.1994) (court determined that since irreparable harm to the environment was to occur, court would allow challenge to remedial action prior to completion), was overruled by the Third Circuit in *Clinton County Commissioners v. United States E.P.A.,* 116 F.3d 1018 (3rd Cir.1997) (en banc).

**3.** The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit. *Bonner v. Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

its judgment for that of the expertise of EPA officials in choosing a clean-up remedy. *United States v. Akzo Coatings of America, Inc.* 949 F.2d 1409, 1425 (6th Cir.1991).

### 1. Compliance with CERCLA

#### (a) Public Participation

■ The non-parties argue that the United States did not provide actual notice to residents of the City of Fort Lauderdale or Broward County of the terms of the proposed consent decree. Such wide notice to all residents of a city the size of Fort Lauderdale, with sufficient detail to provide meaningful notice of the terms of the consent decree, is not required by CERCLA. Actual notice to neighbors of a Superfund site is apparently not required either. CERCLA only provides that the EPA publish and make available a brief analysis of the proposed remedial plan and publish and make available the final remedial action plan. 42 U.S.C. § 9617. The record in this case shows that such notice as required by CERCLA was provided by community meetings, by published notice in local newspapers, including minority-owned newspapers of local community interest, and by making the proposed plan available for review at a local library.

The non-parties also argue that with regard to the notice issue, the public meeting held pursuant to Section 9617 was not at the Wingate facility or close to the facility. CERCLA provides that the public meeting be "at or near the facility at issue." 42 U.S.C. § 9617(a)(1). In this case, although the required meeting was not held at the neighborhood association location sought by the non-parties, the library location chosen was sufficient to meet the CERCLA requirement.[4]

#### (b) ARARs

The non-party Bass Dillard Neighborhood and Prevention, Inc. argues that the consent decree does not comply with certain State of Florida pollution risk standards for certain toxic substances present in the Wingate Landfill. Bass Dillard argues that Florida Statutes Section 376.80(2)(b)(1) regarding brownfields, Section 376.3078 regarding voluntary cleanup of property contaminated with dry cleaning solvents, and Section 376.3071 regarding petroleum pollution, constitute state Applicable or Relevant and Appropriate Requirements ("ARARs") that the EPA is required to attain in their remedial action. The problems with this argument are on two levels. First, the State of Florida has not intervened in this action pursuant to 42 U.S.C. § 9621(f) nor otherwise taken an official position opposing the consent decree, despite the various attempts by the non-parties to introduce letters and memos issued by the staff of the Florida Department of Environmental Protection.

■ Second, even if the non-parties could independently use the state statutes as ARARs to argue that the consent decree does not comply with CERCLA, the Court's analysis of those state statutes leads to the conclusion that the state statutes are not enforceable pollution standards that apply across the state, and thus are not "promulgated" for CERCLA purposes. 42 U.S.C. § 9621(d)(2)(A)(ii). According to EPA, "promulgated" as used in section 9621 refers to "laws imposed by state legislative bodies and regulations developed by state agencies that are of general applicability and are legally enforceable." *Akzo Coatings of America, Inc.*, 949 F.2d at 1440.[5] The state statutes in

---

4. The United States points out that at least four meetings were held with community residents by EPA's outreach staff, not including the public meetings held by the City of Fort Lauderdale during its consideration of the consent decree. See Record of Decision at pp. 2–3 [attached to docket entry 22].

5. The EPA's interpretation of whether these state statutes are ARARs under federal law is entitled to some deference under *Chevron, U.S.A. v. NRDC,* 467 U.S. 837, 843–844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). While the State of Florida may interpret its own laws, this particular analysis is ultimately deter-

question provide incentives to particular industries to comply with stricter standards in return for liability protection and or streamlining of other regulations, and are by their own terms are not applicable to the Wingate site.[6] Any discussion of whether these statutes would otherwise be relevant and appropriate to the Wingate site, even though they do not apply on their face to the Wingate site, is for the State of Florida to formally challenge the consent decree on that basis. No such challenge has occurred in this case.[7]

### 2. Reasonableness of Consent Decree

█ In determining whether the consent decree is reasonable, the Court must recognize that consent decrees are compromises between parties, none of which obtain complete relief. *City of Jackson,* 519 F.2d at 1151–52. That is, the Court recognizes that the United States has some litigation risk when it decided to settle this case for about $20 million in remediation costs paid by Defendants. This Court should not second-guess that litigation decision by a federal agency. If the EPA was wrong in its decision, in that the Wingate landfill cleanup ultimately requires further funding, as conceded at the hearing, it remains the EPA's responsibility to protect the public health and environment for those who live nearby, regardless of who is then financially responsible for the cleanup. In reviewing this consent decree, the Court determines that it was reasonable for the parties into enter this consent decree.

### 3. Adequacy to Protect Public Health

█ In determining whether the consent decree is adequate to protect the public health and the environment, this Court's review is limited to the administrative record. The non-parties argue that this Court should go beyond the administrative record due to allegations of bad faith and collusion among the parties. The non-parties principal argument appears to be that the Defendants' consultant for design of the plastic cap for the landfill, GeoSyntec, does substantial business with some defendants and the EPA. Moreover, the non-parties argue that allowing GeoSyntec to evaluate a competitor's product, specifically the Totalshield spray-on polyurea plastic cap, is evidence of bad faith. The Court disagrees.

The non-parties have made no showing of bad faith in this case, particularly on the part of the EPA. The argument by the non-parties that because the consultant for designing the cap for the landfill under the proposed consent decree also does substantial business with some defendants and the EPA does not rise to the level of bad

mined by whether federal law views these state statutes as ARARs.

6. For example, the brownfield statute only applies to "brownfields" where a property owner has requested designation and agreed to comply with the brownfield statute. Florida Statutes § 376.80(2)(b)(1). In the dry-cleaning solvent statute, the 10 to the minus 6 cancer risk risk level only applies to property owners participating in the voluntary program at a minimum, and at a maximum only applies to property with dry-cleaning solvents underneath. Florida Statutes § 376.3078. Finally, the petroleum statute only applies to cleanup of petroleum contamination sites. Florida Statutes § 376.3071(5). While the staff of the Department of Environmental Protection believes that the cleanup standards in these statutes are ARARs, Letter from Jack Chisolm, Deputy General Counsel, Florida Department of Environmental Protection to Phyllis Harris, Director and General Counsel, Environmental Accountability Division, United States Environmental Protection Agency, Region IV, page 3 (June 3, 1998), they do not apply across the state, and contain several exceptions or limitations on their applicability.

7. Although not officially noticed about the December 21, 1999 hearing as it had not appeared in this case, a representative of the Florida Attorney General appeared and spoke briefly at the hearing only to state that the State of Florida has a difference of opinion with the United States regarding certain risk factors to be used, but the representative was not authorized to state whether the State of Florida supported or opposed entry of the consent decree.

faith to allow this Court to go beyond the administrative record in reviewing the consent decree. The administrative record is quite extensive in its evaluation of the proposed remediation of the Wingate site. Moreover, it is not this Court's role to determine whether Totalshield is a better protection for the public health than the method chosen by the EPA and the defendants.[8] As stated above, this Court may not substitute its judgment for that of the EPA, the federal government agency with expertise in the area of setting the standards and protecting from chemical harm the public water supply. *Chevron, U.S.A. v. NRDC*, 467 U.S. 837, 843–844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

In reviewing the consent decree and the administrative record, the Court determines that it is not inadequate to protect the public health, and should be entered.

### III. CONCLUSION

As stated above and in the case law, it is not this Court's role to second-guess or substitute its judgment for that of the experts at the Environmental Protection Agency. Even if this Court wanted to subject the proposed consent decree to additional scientific scrutiny, Congress and the federal appellate courts have narrowly restricted judicial review at this point, prior to completion of the chosen remedial action.[9] Having reviewed the issues raised by the non-parties, this Court finds that the consent decree must be entered.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff United States' Motion to Enter Consent Decree [DE 20] is hereby **GRANTED**;

2. All other pending motions are denied as moot;

3. The Clerk may close this case, the Court retaining jurisdiction to enforce the provisions of the consent decree as appropriate under CERCLA or other applicable law.

---

8. The Court notes that the EPA is continuing to evaluate the Totalshield method, even according to the non-record letters submitted by the non-parties. It is obvious that the EPA has an interest in finding new and better methods for protection of public health and the environment.

9. It is clear to this Court that any ruling here that rejected the consent decree would likely result in a reversal of such decision at the appellate level, leading to even more delay in beginning the cleanup of the Wingate Landfill site, thus exposing the public to further threats to the environment from the current status quo situation.