BROWARD GARDEN TENANTS ASS'N, Bernard Holmes, Lilliard Holmes, and Betty Joyce Torrence, Plaintiffs,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Carol M. Browner, individually and in her official capacity as Administrator of the United States Environmental Protection Agency, John Hankinson individually and in his official capacity as Regional Director, Region IV, of the United States Environmental Protection Agency, City of Fort Lauderdale, a municipality, the United States Department of Housing and Urban Development, Andrew M. Cuomo, individually and in his official capacity as Secretary of the United States Department of Housing and Urban Development, Defendants.

No. 007557CIV.

United States District Court, S.D. Florida.

Aug. 9, 2001.

Sharon Bourassa–Diaz, Esq., Legal Aid Service of Broward County, Ft. Lauderdale, FL, for Plaintiffs.

Assistant United States Attorney, William Healy, Miami, FL, Barney "Jack" Chisolm, Esq., Deputy General Counsel for State of Florida Department of Environmental Protection; Tallahassee, FL, Winifred N. Okoye, Esq., and Nina Rivera, Esq.; Attorneys for Environmental Protection Agency; (MC 239A), NW Washington, D.C.; William Droze, Esq., David Moore, Esq., and Hollister Hill, Esq., Attorneys for Defendant, City of Ft. Lauderdale; Atlanta, Georgia; Clare Harrington, Esq., Office of General Counsel, U.S. Department of Housing and Urban Development, Washington, D.C., for Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

GOLD, District Judge.

**THIS CAUSE** is before the court upon the defendants' motions to dismiss (DE # 27, 39). The plaintiffs in this case are the Broward Gardens Tenants Association ("Tenants Association"), Bernard Holmes, Lilliard Holmes, and Betty Joyce Torrence. The Tenants Association is an organization composed of residents living in the Broward Gardens Complex in the City of Ft. Lauderdale, and the individual plaintiffs are adult residents of Broward Gardens. The defendants are the United States Environmental Protection Agency ("EPA"); Carol M. Browner ("Browner"),

individually and in her official capacity as Administrator of the EPA; John Hankinson ("Hankinson"), individually and in his official capacity as Regional Director, Region IV, of the EPA; the City of Ft. Lauderdale ("the City"); the United States Department of Housing and Urban Development ("HUD"); and Andrew M. Cuomo ("Cuomo"), individually and in his official capacity as Secretary of HUD. The plaintiffs have filed a seven-count complaint for declaratory and injunctive relief alleging: count I, violation of the Fifth Amendment (against the EPA); count II, violation of the Thirteenth Amendment and 42 U.S.C. § 1982 (against the City); count III, violation of the Fourteenth Amendment and 42 U.S.C. § 1983 (against the City); count IV, violation of Title VI of the Civil Rights Act of 1964 (against the City); count V, violation of Title VIII of the Civil Rights Act of 1964 (against the EPA, the City, Browner, and Hankinson); count VI, violation of the Fair Housing Act, 42 U.S.C. §§ 3604 et seq. (against HUD and Cuomo); and count VII, violation of the Fifth Amendment (against Browner and Hankinson).[1] The plaintiffs allege that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this is an action arising under the Constitution, laws, or treaties of the United States.

The plaintiffs claim that the defendants have acted jointly and severally to establish and maintain a racially segregated system of low income housing in their residential area, Broward Gardens, which is located near the Wingate Superfund Site. In March of 1999, Judge William P. Dimitrouleas of the Southern District of Florida entered a consent decree in *United States v. City of Ft. Lauderdale*, case number 98–6982–CIV. This consent decree was executed between the City and the EPA and provided for the cleanup of the Wingate Superfund Site. According to the plaintiffs, the consent decree does not adequately remedy the high level of toxins and pollutants in the Wingate Superfund Site. The plaintiffs claim that, by following the inadequate cleanup plan embodied by the consent decree, the defendants have perpetuated a de jure system of segregation in Broward Gardens. *See* Compl. at ¶ 5.

The federal defendants and the City each have filed a motion to dismiss. As grounds for their motion, the federal defendants contend that the court lacks subject matter jurisdiction over this case pursuant to § 9613(h) of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9613(h);[2] the plaintiffs lack Article III standing to bring their claims; the federal

1. On July 18, 2001, the plaintiffs filed an amended complaint adding as defendants Christine Todd Whitman, individually and in her official capacity as Administrator of the EPA; A. Stanley Meiburg, individually and in his official capacity as Acting Retional Administrator, Region IV, of the EPA; the Florida Department of Environmental Protection ("FDEP"); David Struhs, individually and in his official capacity as Secretary of FDEP; and Melquiades Rafael Martinez, individually and in his official capacity as Secretary of HUD. The amended complaint also adds the Driftwood Terrace Tenants Association and Lillie Rutledge as plaintiffs. With the excep-

tion of the addition of these parties, the amended complaint is essentially identical to the original complaint. As such, analysis of the defendants' motion to dismiss is not affected by the filing of a new complaint, and this order addresses the allegations contained in the original complaint.

2. CERCLA (42 U.S.C. § 9601 et seq.), as amended by the Superfund Amendment and Reenactment Act of 1986, is a scheme for containing and cleaning up hazardous wastes that are or threaten to be released into the environment. Section 9613(h) is quoted in full at footnote 11.

defendants are immune from suit; and the claims against HUD are barred by the applicable statute of limitations. Like the federal defendants, the City argues that the complaint must be dismissed under § 9613(h) of CERCLA. The City also claims that the plaintiffs have failed to properly effect service of process upon the City and, therefore, that this court lacks personal jurisdiction over the City;[3] the complaint fails to state a claim upon which relief can be granted; and the Tenants Association does not have standing to bring the claims alleged in the complaint. The court heard oral argument on these motions on July 24, 2001. After carefully considering the pleadings, the evidence, and the arguments of counsel, the court finds that the plaintiffs' complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

### Facts and Procedural History[4]

### I. The Wingate Site

The City of Ft. Lauderdale purchased the Wingate Superfund Site in 1951. Three years later, the City began operating Wingate as an incinerator and landfill. Compl. at ¶¶ 49, 51. In 1966, the City began operating a second incinerator at Wingate with a cooling water percolation pond. Compl. at ¶ 51. The City closed down Wingate in June of 1978. The plain-

tiffs claim that the City never conducted a health study of the Site while it was in operation. Compl. at ¶ 51.

### II. The Broward Gardens Community

According to the plaintiffs, Broward Gardens was established by the defendants as part of an overall plan designed to restrict the plaintiffs to racially segregated areas of the City. Compl. at ¶ 38. Broward Gardens is comprised of a population that is approximately ninety-nine percent African–American. Compl. at ¶ 40. It was planned in the 1970s and subsidized by HUD pursuant to the United States Housing Act of 1937. Compl. at ¶¶ 42, 44. The plaintiffs claim that Broward Gardens is located in an area of industrial land use. Some housing units have been constructed less than fifty feet from a rock pit and one-quarter mile from the Wingate Superfund Site. Compl. at ¶ 44. According to the plaintiffs, the defendants constructed Broward Gardens despite their knowledge that the community would be subject to environmental contamination. Compl. at ¶ 51.

### III. Wingate Poses a Health Concern

In 1989, pursuant to section 105 of CERCLA, 42 U.S.C. § 9605, the EPA conducted initial environmental studies of Wingate that resulted in the site being placed on the National Priorities List, a

---

**3.** Subsequent to the filing of the City's motion, the plaintiffs rectified this deficiency. As a result, the City abandoned the argument regarding personal jurisdiction.

**4.** The following facts are derived from the allegations contained in the plaintiffs' complaint. At the outset, the court notes that the complaint is comprised primarily of general and conclusory allegations of racial segregation by HUD and the EPA. *See, e.g.,* Compl. at

¶¶ 17–37. Although the plaintiffs label these statements "allegations of fact", very few factual statements explaining how the defendants have engaged in racial discrimination or segregation actually are contained in the complaint. In contrast, the complaint is replete with factual allegations regarding the technical shortcomings of the Wingate cleanup plan as embodied in the consent decree. *See, e.g.,* Compl. at ¶¶ 52–74.

list of high priority hazardous waste sites.[5] In 1990, the State Health Department conducted a preliminary health study which demonstrated that cancer levels in Broward County were higher in the areas surrounding Wingate than in any other part of Broward County. Compl. at ¶ 52. According to the plaintiffs, Wingate continues to expose nearby residents to hazardous contaminants, such as dioxin and arsenic, that are released into the soil and atmosphere. Compl. at ¶¶ 52, 78. The plaintiffs also claim that the area's drinking water and fish are affected by these contaminants. Compl. at ¶ 52.

## IV.  The Consent Decree

After conducting several studies of Wingate and soliciting public comments, the EPA developed a proposed plan under CERCLA to cleanup Wingate. CERCLA gives the EPA the authority to remove or arrange for the removal of hazardous substances whenever any hazardous substance is released into the environment or there is a substantial threat of such release. *See* 42 U.S.C. § 9604(a)(1).[6] On February 8, 1995, Florida's Department of Environmental Protection ("FDEP") sent a letter to the EPA with its review comments of the cleanup plan. The FDEP listed ten concerns with the EPA's plan. Compl. at

¶ 55. Among the FDEP's concerns was the fact that the EPA was utilizing a level to quantify the risk factor for cancer that was less stringent than the level accepted by the state. The EPA was using a factor of $1 \times 10\text{--}4$, while the FDEP required a level of $1 \times 10\text{--}6$. Compl. at ¶ 55. Despite the FDEP's continued protests over the risk factor proposed by the EPA, the EPA utilized a risk factor of $1 \times 10\text{--}4$ in its final consent decree. Compl. at ¶ 58.

The United States, the City, and other potentially responsible parties prepared a consent decree to address the cleanup of the Wingate Superfund Site.[7] The plaintiffs summarize the remedial actions embodied in the consent decree as follows:

1.  excavation of contaminated soil and incinerator ash in the southern twenty acres of the site, which exceed the EPA's risk threshold, and disposal of the adjacent landfill;

2.  drainage, treatment, and disposal of water in the abutting lake and excavation of the lake's contaminated sediments;

3.  construction of a geosynthetic cap with erosion controls over the landfill;

4.  institutional controls to maintain the site cap, control storm water, and

5.  42 U.S.C. § 9605 provides for the establishment of a national contingency plan for the removal of hazardous substances.

6.  42 U.S.C. § 9604(a)(1) provides in part:

    (1) Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is

authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment.

7.  This consent decree is attached to the plaintiffs' complaint as Exhibit A.

provide for the installation of fencing and signs;

5. institutional controls and/or groundwater use restrictions within the site boundary;

6. storm water management;

7. natural attenuation of contamination for the surface water at abutting lake;

8. ground water, surface water, sediment, and fish tissue monitoring.

Compl. at ¶ 54.

On September 11, 1998, pursuant to section 122 of CERCLA, the United States filed the consent decree for public comment in the United States District Court for the Southern District of Florida. *See United States v. City of Ft. Lauderdale,* Dimitrouleas.[8] The United States solicited comments on the proposals contained in the decree, and, on October 28, 1998, some comments were submitted to the Department of Justice. Legal Aid Services of Broward County, Inc. ("LAS") and the Legal Environmental Assistance Foundation ("LEAS") were among the parties that submitted comments challenging the proposed remedy for the Wingate site.[9] LAS and LEAS made the following objections to the consent decree: it does not require soil cleanup to the degree required by Florida law and, as a result, it never will be removed from the National Priori-

ties List; it does not assure protection of human health with respect to carcinogenic concentrations of arsenic and dioxin; and it omits certain contaminated areas within Wingate from the plan. Compl. at ¶ 62. In their complaint, the plaintiffs make the same objections to the consent decree. They also take issue with the "cap and leave" remedy implemented by the decree, whereby a "plastic cap" is used to cover the contaminated area. The plaintiffs claim that the "plastic cap" should be withdrawn, as was done for the Stauffer Chemical Superfund Site in Tarpon Springs, Florida, an area that has a 93.3% white population. Compl. at ¶ 74.

At the conclusion of the public comment period, several non-parties who reside in close proximity to Wingate and who were represented by LAS and LEAF, filed a motion opposing the United States' motion to enter the consent decree. They challenged the adequacy of the selected remedy for the site. On December 28, 1999, this court approved the consent decree, after holding a hearing that addressed the issues raised by the nonparties. *See United States v. City of Ft. Lauderdale,* 81 F.Supp.2d 1348 (S.D.Fla.1999). Currently, the remedy outlined in the consent decree is being implemented by the defendants.

## IV. The Defendants' Alleged Misconduct

The plaintiffs' claims against the EPA primarily are based upon the consent de-

---

**8.** The plaintiffs' complaint does not contain a thorough discussion of the procedural history of the consent decree in the Southern District of Florida. For example, it omits the fact that the consent decree was entered by a judge in this court and that many of the same objections to the consent decree contained in the complaint were made prior to the approval of the consent decree by Judge Dimitrouleas. In analyzing the motions to dismiss, the court has taken judicial notice of the proceedings before Judge Dimitrouleas. *See United States v. Jones,* 29 F.3d 1549, 1553 (11th Cir.1994) (stating that a court may take judicial notice of a document filed in another court to establish the fact of litigation and related filings).

**9.** LAS and LEAF were represented by the same counsel that is representing the plaintiffs in this case.

cree's inability to adequately address the environmental problems affecting Wingate. As evidenced by the allegations contained in paragraphs fifty-four through sixty-seven of the plaintiff's complaint, these claims are direct challenges to the consent decree.[10] According to the plaintiffs, HUD was aware that these shortcomings affected Broward Gardens, but it relied entirely upon the EPA's assessment of the environmental conditions and thereby defaulted upon its independent obligations concerning federal housing projects. Compl. at ¶ 69. The plaintiffs state that HUD had full knowledge of the segregative effect of the consent decree. Compl. at ¶ 70. They claim that HUD and the City should have provided for the relocation of Broward Gardens' residents, rather than maintain public housing in an area of such high levels of contamination. Compl. at ¶¶ 72, 79.

### *Standard of Review*

Attacks on subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) come in two forms. "Facial attacks" on the complaint "require [ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

These two forms of attack differ substantially. On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true. *See Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.1981). When the attack is factual, the trial court may proceed as it never could under 12(b)(6). Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of subject matter jurisdiction claims. *See id.* In this case, the defendants have made a facial attack upon the complaint and have not attempted to present any factual evidence from outside the complaint to the court. Therefore, the motion to dismiss will be reviewed under the same standards as a 12(b)(6) motion, which are set forth below.

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir.1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). Determining the propriety of granting a motion to dismiss re-

---

**10.** Paragraphs fifty-four through sixty-seven of the complaint recount in great detail all the alleged shortcomings of the consent decree.

quires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1483 (11th Cir.1994). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Svcs., Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (citation omitted); *Jackam v. Hospital Corp. of Am. Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir.1986). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief can be granted. *M/V Sea Lion V v. Reyes,* 23 F.3d 345, 347 (11th Cir.1994) (citation omitted). Nevertheless, to survive a motion to dismiss, a plaintiff must do .more than merely "label" his claims. *Blumel v. Mylander,* 919 F.Supp. 423, 425 (M.D.Fla.1996). Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993).

### Analysis

■ The defendants' primary argument in support of dismissal of the complaint is that this case must be dismissed under Federal Rule of Civil Procedure 12(b)(1) because the court lacks subject matter jurisdiction over the plaintiffs' claims. According to the defendants, CERCLA divests this court of jurisdiction over the plaintiffs' complaint, which utilizes the civil rights statutes and the Constitution to challenge the ongoing cleanup plan embodied·by the consent decree in *United States v. City of Ft. Lauderdale,* case number 98–6982–CIV–Dimitrouleas. The plaintiffs counter that, because some of their challenges to the consent decree are constitutional, CERCLA's ban against pre-enforcement judicial review is inapplicable. The court has reviewed the parties' arguments, the complaint, and the relevant case law and finds the defendants' position to be meritorious.

The relevant provision in CERCLA, 42 U.S.C. § 9613(h), states that no federal court shall have jurisdiction to review any challenges to removal or remedial actions selected by the EPA.[11] Congress' intent that "[n]o federal court shall have jurisdiction under federal law" is clear. 42 U.S.C.

---

11. The full text of the provision is as follows:
   (h) Timing of Review
   No federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9696(a) of this title, in any action except one of the following:
   (1) An action under section 9607 of this title to recover response costs or damages for contribution.

(2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.
(3) An action for reimbursement under section 9606(b)(2) of this title.
(4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

§ 9613(h). There are five exceptions to this jurisdictional bar, none of which the plaintiffs claim is applicable. Section 9613(h) is a timing provision, which bars citizens from raising challenges to an EPA-approved CERCLA remedy until the remedy is complete; it does not operate as a complete bar to jurisdiction. In enacting this provision, Congress intended to prevent time-consuming litigation that might interfere with CERCLA's overall goal of effecting the prompt cleanup of hazardous waste sites. *See United States v. Denver*, 100 F.3d 1509, 1514 (10th Cir.1996).

In this case, the injury alleged by the plaintiffs is that Broward Gardens was established pursuant to City and HUD policies and practices of de jure segregation, but a review of the complaint shows that the plaintiffs' claims are, in their essence, challenges to the cleanup procedures adopted in *United States v. City of Ft. Lauderdale*.[12] It is undisputed that the cleanup of Wingate has not been completed. As such, the plain language of § 9613(h) bars the plaintiffs' *statutory* claims as set forth in counts IV (violation of Title VI of the Civil Rights Act of 1964), V (violation of Title VIII of the Civil Rights Act of 1964), and VI (violation of the Fair Housing Act). *See Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1018 (3d Cir.1991) (holding that challenges to cleanup procedures brought under National Historic Preservation Act were barred by plain language of § 9613(h)); *Concerned*

*Citizens of Agric. St. Landfill, Inc. v. Browner*, 1998 WL 104656, *6, No. Civ. A. 98–0124 (E.D.La. Mar. 9, 1998) (holding that challenges to cleanup procedures brought under Fair Housing Act were barred by plain language of § 9613(h)); *see also Voluntary Purch. Groups, Inc. v. Reilly*, 889 F.2d 1380, 1388 (5th Cir.1989) (holding that district court did not have jurisdiction over declaratory judgment action against EPA where § 9613(h) clearly forecloses pre-enforcement review). The issue is whether the court has jurisdiction over the plaintiffs' *constitutional* challenges to the cleanup plan as set forth in counts I (violation of the Fifth Amendment), II (violation of the Thirteenth Amendment and 42 U.S.C. § 1982), III (violation of the Fourteenth Amendment and 42 U.S.C. § 1983), and VII (violation of the Fifth Amendment).

## I. Jurisdiction Over Constitutional Challenges to CERCLA Cleanup Plans

Although there is unanimous agreement amongst the circuits that statutory claims are barred, there is a split of authority on the question of whether 42 U.S.C. § 9613(h) divests district courts of subject matter jurisdiction over constitutional challenges to CERCLA cleanup plans. Most courts that have decided the issue hold that, like statutory claims, all constitutional challenges are precluded by § 9613(h).

---

(5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.
42 U.S.C. § 9613(h).

12. Throughout oral argument, the plaintiffs insisted that their claims were challenges under the Constitution only, not challenges to a CERCLA-based remedy. In truth, the plaintiffs' claims are nothing more than challenges to a consent decree that was implemented

under CERCLA. This conclusion is buttressed by the remedies the plaintiffs seek in their complaint—the adoption of the state's stricter environmental standards, rather than those used in the consent decree; a declaration that the actions of the defendants, as embodied by the consent decree, are unconstitutional; and the prevention of the plaintiffs' exposure to contaminants.

See *Aztec Minerals Corp. v. United States Envt. Prot. Agency,* 1999 WL 969270, No. 98–1380 (10th Cir. Oct. 25, 1999); *Barmet Aluminum Corp. v. Reilly,* 927 F.2d 289 (6th Cir.1991). The First Circuit has adopted a test that looks at a plaintiff's claims and asks whether the plaintiffs are challenging the administration of CERCLA or CERCLA itself. *See Reardon v. United States,* 947 F.2d 1509 (1st Cir. 1991). One district court, but no circuit court, has adopted the plaintiffs' view and holds that no constitutional challenges are precluded by § 9613(h). *See Washington Park Lead Comm., Inc. v. United States Envt. Prot. Agency,* 1998 WL 1053712, No. 2:98CV 421 (E.D.Va.1998); *Reeves Bros. v. United States Envt. Prot. Agency,* 956 F.Supp. 665 (W.D.Va.1995). These decisions are discussed in more detail below.

## A. All Claims, Including Constitutional, Are Barred

Most courts that have decided the issue hold that all claims, including constitutional challenges to CERCLA itself, are barred by § 9613(h). In *Barmet Aluminum Corp. v. Reilly,* 927 F.2d 289 (6th Cir.1991), the Sixth Circuit held that the district court lacked jurisdiction to enjoin the EPA, on due process grounds, from regulating the plaintiff's landfill. The court agreed with the EPA, which argued that "Congress passed section 9613(h) to foreclose interpretations allowing pre-enforcement review of *constitutional* challenges." *Id.* at 292 (emphasis added). According to the Sixth Circuit, neither the legislative history nor the statutory language supported the plaintiffs' argument that they could bring constitutional claims against the EPA for the administration of CERCLA or against CERCLA itself. *Id.* at 292. Most significantly, the court found that an injured party's due process rights

were not violated by CERCLA's pre-enforcement foreclosure of constitutional challenges because the statute still left open the possibility of a post-enforcement hearing. Because Congress had not completely foreclosed parties from obtaining review of EPA actions, but merely delayed such a hearing, the Sixth Circuit found that the limited proscription against judicial review of constitutional challenges to CERCLA was constitutional. *Id.* at 295; *cf. Hanford Downwinders Coal'n, Inc. v. Dowdle,* 71 F.3d 1469, 1484 (9th Cir.1995) (holding that application of § 9613(h) did not violate constitution and "is appropriate even if there is a possibility that plaintiffs' claims will never be heard in federal court"); *United States v. Cohen,* 914 F.Supp. 252, 255 (N.D.Ill.1996) (holding that CERCLA's bar to pre-enforcement judicial review did not violate constitution where judicial review was available at a later stage).

Similarly, in *Aztec Minerals Corp. v. United States Environmental Protection Agency,* 1999 WL 969270, No. 98–1380 (10th Cir. Oct. 25, 1999), the Tenth Circuit held that the district court lacked jurisdiction over the plaintiffs' claims that the EPA's actions pursuant to CERCLA violated the due process clause of the Fifth Amendment. According to the Tenth Circuit, the limited categories that are exempt from § 9613(h)'s bar against judicial review are expressly listed in the provision. *Id.* at *3. Because the plaintiffs' constitutional claims did not fall into one of these exceptions, the plaintiffs could not obtain pre-enforcement judicial review. *See id.; see also South Macomb Disp. Auth. v. United States Envt. Prot. Agency,* 681 F.Supp. 1244 (E.D.Mich.1988) (holding that § 9613(h)'s jurisdictional bar applied to statutory and constitutional challenges to EPA actions).

During oral argument, the plaintiffs repeatedly stated that their case differed from all other cases challenging CERCLA cleanup plans because it was the only one that involved the Constitution. The facts of *Barmet Aluminum Corp.* and *Aztec Minerals Corp.* refute the plaintiffs' argument and support the defendants' position because both cases dealt with constitutional challenges under the due process clause of the Fifth Amendment, one of the same claims asserted by the plaintiffs in their complaint. In these cases, the Third and Sixth Circuits squarely held that § 9613(h) precludes pre-enforcement challenges to CERCLA cleanup plans, whether the challenges are based on other federal statutes or the Constitution. Under *Barmet Aluminum Corp.* and *Aztec Minerals Corp.*, the plaintiffs' claims in this case must be barred.

If CERCLA precluded statutory and constitutional challenges altogether, then courts would be compelled to reach a different result. As discussed by the courts, however, a finding that judicial review can be temporarily precluded complies with constitutional safeguards because § 9613(h) eventually allows review of constitutional and statutory claims once the cleanup is complete. *Clinton County Commissioners v. United States Environmental Protection Agency,* 116 F.3d 1018 (3d Cir.1997), recognized this point, where the Third Circuit stated that Congress was free to preclude or allow judicial review under the doctrine of sovereign immunity. The court in *Clinton County Commissioners* agreed that § 9613(h)'s preclusion of jurisdiction does not create an unconstitutional impediment to right of access to courts. It added that the Constitution does not require judicial review of a claim to a CERCLA cleanup "that threatens to take the very lives" of the plaintiffs because such an argument would be "inconsistent with established principles of sovereign immunity". *Id.* at 1025. The Third Circuit stated that Congress was "absolutely free" to limit the extent to which it consents to suits against the EPA, which is an instrumentality of the federal government and therefore entitled to sovereign immunity. *Id.*

The Eleventh Circuit has not had an opportunity to discuss whether § 9613(h) applies to constitutional challenges to CERCLA cleanup plans. At the very least, it has held that pre-enforcement judicial review over statutory claims is precluded by § 9613(h). *See Alabama v. United States Envt. Prot. Agency,* 871 F.2d 1548 (11th Cir.1989); *Dickerson v. Administrator, Envt. Prot. Agency,* 834 F.2d 974 (11th Cir.1987). Like the Third Circuit in *Clinton County Commissioners,* the Eleventh Circuit also has found that such a bar is constitutional. *See Dickerson v. Administrator, Envt. Prot. Agency,* 834 F.2d 974, 978 n. 7 (11th Cir.1987) (holding that due process does not require access to the courts before final administrative action). It is not clear whether the plaintiffs' claims in *Dickerson* and *Alabama* were constitutionally or statutorily-based. In *Alabama,* the Eleventh Circuit held that the district court did not have jurisdiction, pursuant to CERCLA, over the plaintiffs' claims, where they alleged that the EPA wrongly denied them notice and an opportunity for a hearing before implementing a remedial cleanup action. *Id.,* 871 F.2d at 1557. Although the Eleventh Circuit did not specifically state that *Dickerson* involved Fifth Amendment due process claims, the plaintiffs' allegations, which concerned the alleged deprivation of their property by the EPA pursuant to a CERCLA-based cleanup plan, appeared to

be constitutional. *Id.*, 834 F.2d at 976–78. Nevertheless, the general language used by the Eleventh Circuit in *Dickerson*— "federal courts do not have subject matter jurisdiction for pre-enforcement reviews of EPA removal actions pursuant to section 9604"—supports a broad interpretation of these cases. *Id.* at 977. Because the Eleventh Circuit has found that Congress may proscribe judicial review over challenges to CERCLA cleanup plans, and that such a bar does not violate the Constitution, the Eleventh Circuit is likely to agree with other circuits that find that § 9613(h) bars judicial review over constitutional challenges to CERCLA.

## B. The First Circuit's Test

The First Circuit, in, *Reardon v. United States*, 947 F.2d 1509 (1st Cir.1991), developed its own approach to the question of whether § 9613(h) bars statutory and constitutional challenges to CERCLA cleanup plans. In *Reardon*, the First Circuit drew a distinction between suits challenging the constitutionality of CERCLA itself and those challenging the constitutionality of the remedy proposed by the EPA. According to the court, while cases of the latter type are barred by § 9613(h), suits challenging the overall constitutionality of the statute cannot be barred by Congress. *Id.* at 1515. The plaintiff in *Reardon* asserted that the EPA's imposition of a CERCLA lien on his land without a hearing violated the due process clause of the Fifth Amendment. *Id.* at 1511. The First Circuit noted that the literal language of § 9613(h) bars "challenges to removal or remedial action," which are challenges to the EPA's

administration of CERCLA.[13] *Id.* at 1514. These are claims wherein a plaintiff asserts that the EPA did not select the proper removal or remedial action in light of the standards established by the CERCLA statutes. *See id.* Constitutional challenges to the statute itself are not barred because Congress did not express a clear intention to preclude such challenges. *See id.* The First Circuit found that the plaintiffs' due process claim was not a challenge to the way the EPA administered CERCLA because it did not involve the merits of any particular removal or remedial action. *See id.* Instead it was a challenge to CERCLA itself, which allows the government to file lien notices without holding a hearing on the validity of the lien. Because the plaintiff was asserting that a provision of CERCLA violated the Constitution, the court held that the action was barred by § 9613(h). *See id.* The First Circuit went on to state:

> [I]t is important to make clear that we are not holding that *all* constitutional challenges involving CERCLA fall outside the scope of § 9613(h). A constitutional challenge to EPA administration of the statute may be subject to § 9613(h)'s strictures. Such a claim may well be a "challenge [ ] to removal or remedial action selected under section 9604 of this title," and may thus fall within § 9613(h)'s bar. We find only that a constitutional challenge to the CERCLA *statute* is not covered by § 9613(h).

*Id.* at 1515 (emphasis in original).

Under the First Circuit's reasoning in *Reardon*, the plaintiffs' claims in this case

---

**13.** CERCLA defines "removal" as "the cleanup or removal of released hazardous substances from the environment" and "remedial action" as "those actions consistent with permanent remedy taken instead of or in addi-

tion to removal actions." 42 U.S.C. § 9601(23), (24). The consent decree challenged by the plaintiffs in this case is a remedial action.

would be barred. The *Reardon* plaintiffs claimed that CERCLA's statutory scheme violated the constitution because it provides for the imposition of liens without a hearing. This was a constitutional challenge to CERCLA itself. Here, however, the plaintiffs are challenging a "removal or remedial action" selected by the EPA under CERCLA. The plaintiffs do not allege that a CERCLA provision fosters discrimination. Instead, they contend that the Wingate cleanup plan adopted by the defendants under CERCLA and embodied by the consent decree fosters a system of de jure segregation. They specifically seek to change the consent decree. This is a challenge to the administration of the statute because the consent decree at issue resulted from the CERCLA implementation method that was chosen by the government. Under the First Circuit's reasoning, such a challenge is precluded by § 9613(h) until the EPA completes the cleanup plan.

At the present time, it is not necessary to decide whether the Eleventh Circuit would follow the reasoning of the Third and Sixth Circuits, which, as discussed in the preceding subsection, bar all statutory and constitutional challenges, or whether it would adopt the more analytical approach of the First Circuit in *Reardon*. This is because the plaintiffs' constitutional claims in this case would be barred under either approach.

## C. All Constitutional Claims Are Allowed

Extensive research has revealed only two Virginia district courts decisions that support the plaintiffs argument against dismissal of the complaint, and these Virginia cases are the only ones on which the plaintiffs rely. In *Reeves Brothers, Inc. v. United States Environmental Protection Agency*, 956 F.Supp. 665 (W.D.Va.1995), the plaintiff alleged that the EPA had adopted a policy or practice of warrantless searches of private property in violation of the Fourth Amendment when it administered its CERCLA remedies. *Id.* at 674. The court found, "While section 9613(h)'s prohibition clearly precludes statutory claims, it does not extend to constitutional challenges to the actions of the EPA in executing the statute's commands." *Id.* According to the court, to interpret CERCLA so as to prevent review of the constitutionality of the EPA's actions would "raise serious constitutional questions." *Id.*

Similarly, in *Washington Park Lead Committee, Inc. v. United States Environmental Protection Agency*, 1998 WL 1053712, No. 2:98CV421 (E.D.Va.1998), the court held that residents of predominantly African–American low-income housing could assert claims of unconstitutional discrimination against the EPA and a city based on a selected CERCLA remedy. Although the claims in *Washington Park* are similar to those of the instant case, the factual allegations supporting discrimination in *Washington Park* are much more severe. In *Washington Park*, the defendants endorsed a plan that called for the removal and relocation of all privately-owned housing and no relief for the low-income areas. In this case, the plaintiffs have not alleged that they have been treated any differently than other residents in the area surrounding Wingate, and their complaint does not seek relocation as a remedy.[14] This is significant because the court in *Washington Park* granted relief

---

14. During oral argument, the plaintiffs suggested that paragraphs seven and eight of

because it specifically found that "one of the remedies that the plaintiffs seek is relocation and not to put a stop to the remedial action."*Id.* at *9. Here, the only relief the plaintiffs seek is to put a stop to the remedial action. Because such relief would directly interfere with the CERCLA cleanup plan, it must be denied.

The plaintiffs' reliance on *Washington Park* and *Reeves* is not persuasive. These decisions have not been followed in other circuits, and they are not binding in this court. *Washington Park* is the only reported case that has relied on *Reeves* as persuasive authority, and *Washington Park* has not been cited by any other reported decision. Additionally, as discussed in subsection I., A., above, § 9613(h)'s bar on judicial review does not present constitutional problems because it acts only as a temporary bar, not a permanent impediment to judicial review.

In their briefs, the plaintiffs also rely heavily on *Ehrlich v. Reno,* 1994 WL 613698, No. 93–5829 (E.D.Pa. Nov. 2, 1994), where the court held that § 9613(h) did not preclude judicial review over constitutional claims. The plaintiffs' arguments pursuant to *Ehrlich* are without merit because that decision was vacated

without an opinion by the Third Circuit in *Ehrlich v. Reno,* 68 F.3d 456 (3d Cir.1995). No circuit court has adopted the position espoused by the plaintiffs. Only the First Circuit has come close in *Reardon,* and, as discussed in subsection I, B, above, that court qualified its holding by establishing a test that distinguishes between challenges to CERCLA itself and challenges to the administration of CERCLA.

## II. This Court Has Precluded Review Over Plaintiffs' Challenges

■ The plaintiffs overlook the fact that this court already has held that § 9613(h) bars judicial review over their challenges to the CERCLA cleanup plan at issue. In *United States v. City of Ft. Lauderdale,* 81 F.Supp.2d 1348 (S.D.Fla. 1999), Judge Dimitrouleas held that non-parties to the consent decree were barred under § 9613(h) from interfering in the action between the United States and the City. *Id.* at 1350 Although the plaintiffs here did not directly attempt to participate in the earlier action, their interests were represented by LEAS and LAS. Judge Dimitrouleas held that, under § 9613(h), he had no jurisdiction to consider the challenges made by LEAS and LAS.[15]

The court has conducted an independent review of the docket and finds that the

pages fifty-three and fifty-four of their complaint should be read as a request for relocation. There is nothing in the language of these paragraphs to support this conclusion. These sections of the complaint ask the court to:

> 7. Order the Defendants promptly to take effective action to disestablish the continuing de jure segregation of Broward Gardens and the conditions, features, and effects of that segregation, including the continued isolation and exposure of Broward Gardens to contamination, and industrial and other adverse land use conditions;
> 8. Order that the Defendants promptly take effective action to disestablish the con-

tinuing de jure segregation of Broward Gardens by adopting and implementing the state's stricter standards in the remedial plan for Wingate, including the elimination of the "cap and mount" method;

Compl. at 53–54. In fact, nowhere in the complaint do the plaintiffs specifically request relocation as a remedy.

15. The full text of the relevant language in *United States v. City of Ft. Lauderdale* is as follows:

> Even putting aside the·constitutional and prudential limitations that the United States Supreme Court's standing doctrines place upon the exercise of federal jurisdiction that may bar the non-parties' ability to

challenges to the consent decree asserted in *City of Ft. Lauderdale* are essentially the same challenges asserted by the plaintiffs in this case. *Compare* Compl. at ¶¶ 54–68; Case No. 98–6982–CIV, Non-Parties' Mtn., DE # 7. Here, the plaintiffs have masked those challenges with allegations of racial discrimination, but they cannot escape the fact that, in both cases, they are asserting the same deficiencies against the consent decree. The plaintiffs' complaint repeatedly states that the defendants have implemented a "policy" of de jure segregation, but the plaintiffs can point to no practice other than the deficient cleanup embodied by the consent decree. Their present claim is nothing more than a direct challenge to the Wingate cleanup remedy selected by the defendants and approved by Judge Dimitrouleas. For the reasons stated in *United States v. City of Ft. Lauderdale*, their present challenges were unsuccessful during the public comment period. In dismissing those claims, Judge Dimitrouleas recognized the preclusive effect of § 9613(h). Now, the plaintiffs are simply reasserting the same direct challenge to the consent decree under the guise of Constitutional and civil rights claims, but this court already has held that they are barred by § 9613(h).

This point also illustrates why the remaining challenges asserted by the defendants—lack of standing, failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and sovereign immunity—may well be meritorious.[16] The plaintiffs' complaint is missing the link that logically ties the environmental conditions affecting Broward Gardens to the alleged effect of racial segregation. Nowhere do the plaintiffs explain why remedying the environmental hazards posed by Wingate will alleviate the racial segregation in Broward Gardens.

Dismissal due to the lack of subject matter jurisdiction covers all the defendants named in the plaintiffs' complaint. This is because neither the consent decree nor CERCLA differentiates between municipalities or federal government agencies as parties to cleanup plans. Additionally, all the defendants are inextricably intertwined in the consent decree, which also does not differentiate between them. To allow the case to proceed against the City or HUD would prevent the EPA from continuing with the cleanup plan and, therefore, would interfere with the execution of the consent decree.

Although the court finds that this complaint must be dismissed for lack of sub-

show that they have standing to participate in this case . . ., CERCLA contains a statutory bar to public participation in federal court at this point in time. CERCLA provides that "no federal court shall have jurisdiction under federal law . . . [exceptions not relevant here] . . . to review any challenges to removal or remedial action selected under section 9604 of this title . . . in any action except one of the following . . ." 42 U.S.C. § 9613(h) (the non-parties do not argue that any listed exceptions are applicable to this case). Even when such jurisdiction is allowed under subsection (4) the United States Court of Appeal for the Eleventh Circuit has interpreted this jurisdictional limitation to apply "only after a remedial action is actually completed." *State*

of Alabama v. United States Environmental Protection Agency, 871 F.2d 1548, 1557 (11th Cir.1989), *cert. denied*, 493 U.S. 991, 110 S.Ct. 538, 107 L.Ed.2d 535 (1989). Thus, judicial review to challenge a proposed remedial action is delayed until all activities in the Environmental Protection Agency's Record of Decision for the surface cleanup phase have been completed. . . . Thus, the non-parties cannot assert standing under CERCLA at this time.
*Id.* at 1350 (some citations omitted).

16. Because the plaintiffs' complaint is being dismissed for lack of subject matter jurisdiction, the court does not reach the other issues raised by the defendants' briefs.

ject matter jurisdiction, the plaintiffs are not left without a remedy. The relevant CERCLA provision states, "No Federal court shall have jurisdiction under Federal law...." 42 U.S.C. § 9613(h). This language precludes only judicial review of claims brought pursuant to federal statutes in United States district courts. CERCLA does not prevent the plaintiffs from bringing claims based on state law in a state court. Alternatively, the plaintiffs may choose to wait until the Wingate cleanup plan is complete, and then reassert their revised federal claims in this court. Accordingly, it is:

**ORDERED AND ADJUDGED that:**

1. The defendants' motions to dismiss (DE # 27, 39) are GRANTED.

2. The plaintiffs' complaint is DISMISSED WITHOUT PREJUDICE.

3. The Clerk of the Court shall CLOSE this case.

4. All pending motions are DENIED AS MOOT.